# EXHIBIT A

Electronically Filed - Dallas - December 19, 2018 - 10:51 AM

## IN THE CIRCUIT COURT OF DALLAS COUNTY, MISSOURI

**CURTIS JACKSON AND ANTOINETTE CHAPMAN, individually and on behalf of all others similarly situated**

                                      Plaintiffs,

vs.                                    Case No.

**GREEN DOT CORPORATION,**
Serve:
CSC-Lawyers Incorporating Service Company
221 Bolivar St.
Jefferson City, MO 65101

                             Defendant.

## PETITION

Plaintiffs, individually and on behalf of all others similarly situated, through counsel,

bring the following action against Defendant, Green Dot Corporation ("Green Dot"):

### Introduction

1. Plaintiffs bring the following class action petition for damages arising out of their

   purchase of refillable credit cards. Defendant Green Dot marketed and sold the refillable

   credit cards at retail stores in Missouri, in Pennsylvania, and across the rest of the United

   States. Green Dot markets the cards as secure, reliable methods of payment; however, the

   cards are neither secure nor reliable as hundreds—if not thousands—of people have made

   various complaints about Green Dot and the refillable credit cards Green Dot markets.

   Plaintiffs and the putative class members were all duped into purchasing the cards and

   lost money because of Defendant's deceptive, fraudulent practices.

### Parties, Jurisdiction, Venue

2. Plaintiff, Curtis Jackson, is a Missouri resident.

3. Plaintiff, Antoinette Chapman, is a Delaware resident.

4. Defendant is a Delaware corporation, lawfully registered with the Missouri secretary of state and authorized to conduct business in Missouri

5. Defendant can be served with process at CSC-Lawyers Incorporating Service Company Bolivar St. Jefferson City, MO 65101.

6. Defendant markets itself as a pro-consumer, financial technology innovator with a mission to reinvent personal banking for the masses.

7. According to its website, Green Dot is the largest provider of reloadable prepaid debit cards and cash reload processing services in the United States.

   http://ir.greendot.com/phoenix.zhtml?c=235286&p=irol-irhome.

8. Green Dot's headquarters are located in Pasadena, California, but it operates additional facilities throughout the United States.

9. Plaintiffs' claims are brought pursuant to this court's original jurisdiction over all cases and matters, such jurisdiction granted by Mo. Rev. Stat. § 478.070.

10. Venue is proper under Mo. Rev. Stat. § 508.010 in that the actions and occurrences described herein occurred in Dallas County, Missouri.

## **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

11. Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

12. Green Dot claims to use security measures that comply with federal law to protect customers' personal information from unauthorized access and use.

13. Green Dot claims to use computer safeguards and secured files and buildings to protect its customers' personal information.

14. The terms of service set forth by Defendant Green Dot permit Defendant Green Dot to unilaterally change the terms of service.

15. The terms of service state:

*Change in Terms.* Subject to the limitations of applicable law, we may at any time add to, delete or change the terms of this Agreement by sending you a notice (unless otherwise stated in this Agreement that no notice shall be required). We may not give you advance notice if we need to make the change immediately in order to comply with applicable law or to maintain or restore the security of the Card or any related payment system. If any such change becomes permanent and disclosure to you of the change would not jeopardize the security of the Card or any related payment system, we will provide notice to you within 30 days from the making of the change or as otherwise permitted or required by law. See the section titled "Notices" for information on where we will send any such notices.

16. Plaintiffs had no right to unilaterally change the terms of service with Green Dot.

*Plaintiff Jackson*

17. In 2017, Plaintiff Jackson purchased a Green Dot refillable debit card.

18. On or about June 5, 2018, Plaintiff Jackson obtained a short-term loan in the amount of $1,206.20 and had the loan proceeds transferred to the Green Dot card he purchased in 2017.

19. Defendant represented to Plaintiff that the funds would be available for use on or before June 12, 2018.

20. Plaintiff Jackson received a message from Defendant on June 12, 2018 that the funds had been received and were in his Green Dot prepaid debit card account.

21. However, when Plaintiff Jackson attempted to use the funds, the prepaid debit card would not function.

22. Plaintiff Jackson attempted to log on to the Green Dot app on his smart phone to resolve his issue, but he received a message that his account was blocked.

**Page 3 of 26**

23. Plaintiff Jackson repeatedly contacted Defendant's customer service department but never received any assistance to remedy the problems with his prepaid debit card account.

24. On one occasion, the customer service representative told Plaintiff Jackson that the representative would schedule a call for Plaintiff Jackson with someone from the corporate offices. Defendant never scheduled the call.

25. On another occasion, one of Defendant's account specialists spoke with Plaintiff Jackson and told him that the specialist couldn't assist Plaintiff Jackson.

26. Finally, Plaintiff Jackson called to get assistance with his account and Defendant blocked Plaintiff Jackson's telephone number.

27. To date, Plaintiff Jackson has not been able to access or use the money he loaded on the Greene Dot prepaid debit card.

28. Because Plaintiff Jackson was unable to access these funds, Plaintiff Jackson was unable to make a timely payment on a storage unit where he kept a large portion of his personal property. Because of the non-payment, Plaintiff Jackson lost the storage and all of its contents, which were valued at several thousand dollars.

*Plaintiff Chapman*

29. Plaintiff Chapman visited a Rite Aid Store in Philadelphia, Pennsylvania in December 2016 or January 2017 and loaded $2,500.00 on a Green Dot refillable debit card.

30. Plaintiff Chapman did not attempt to use the card until May 19, 2017, when she made a $67.00 purchase.

31. After making the $67.00 purchase Plaintiff Chapman again attempted to use the Green Dot card to make purchases, but she was unable to do so.

32. The Green Dot card would not allow her to make any more purchases.

33. Plaintiff Chapman contacted customer service for Defendant Green Dot several times to discuss the problems she was having with the card.

34. On one occasion, Defendant's customer service representative told Plaintiff Chapman that, while Defendant had record of Plaintiff Chapman activating three different cards, none of the cards had any money on them.

35. The next day, Defendant's customer service representative told Plaintiff Chapman that the $2,500.00 had been found and that it was being processed on another card. The representative told Plaintiff Chapman that the money would be available in one to two hours.

36. When the money did not become available on any other cards, Plaintiff Chapman called Defendant's customer service department again and spoke with a customer service supervisor.

37. The supervisor told Plaintiff Chapman that Defendant was processing the money and that it would take approximately 24 hours to load onto her card.

38. Plaintiff Chapman called Defendant's customer service department again after the money did not become available on any cards.

39. During that call, Defendant's customer service representative told Plaintiff Chapman that no money had ever been loaded onto the prepaid debit card.

40. During another call with customer service, Defendant's representative advised Plaintiff Chapman that Defendant could see that she had loaded the $2,500.00 on the card, but they could not see any transactions and that they could no longer see a balance on the card.

41. Defendant's customer service representative then told Plaintiff Chapman that there was nothing Defendant could do for Plaintiff Chapman.

42. At the time she attempted to use the Green Dot card, Plaintiff Chapman was pregnant and intended to use the money to move.

43. The money was never available to Plaintiff Chapman.

44. At no time has Plaintiff Chapman been able to use the money she loaded onto the Green Dot prepaid debit card.

## CLASS ALLEGATIONS

45. Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

46. Plaintiff brings the following claims individually and behalf of the following classes of individuals:

**Nationwide class**: All individuals who purchased Green Dot reloadable prepaid debit cards and who loaded funds on to the cards during the five years preceding the filing of this action who attempted to use their cards but were unable to because either (1) Green Dot reported that the cards were registered to another user; or (2) Green Dot lost the money they loaded onto the card; or (3) Green Dot blocked access to the account.

**Missouri Subclass**: All Missouri residents who purchased Green Dot reloadable prepaid debit cards for personal, family, or household use during the five years preceding the filing of this action who attempted to use their cards but were unable to because Green Dot reported that the cards were registered to another user and who lost the money they loaded onto the card.

**Pennsylvania Subclass**: All Pennsylvania residents who purchased Green Dot reloadable prepaid debit cards for personal, family, or household use during the six years preceding the filing of this action who attempted to use their cards but were unable to because Green Dot reported that the cards were registered to another user and who lost the money they loaded onto the card.

47. Plaintiffs also bring this class action on behalf of themselves and subclasses consisting of consumers in the following states: Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Illinois, Indiana, Kansas, Louisiana, Massachusetts,

Maryland, Michigan, Missouri, Mississippi, North Carolina, New Hampshire, New Jersey, Nevada, New York, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia, and Washington (the "**State Subclasses**").

48. The class also includes all other legal representatives, heirs, or beneficiaries ("Representative Claimants"), and any other persons asserting the right to sue Defendant independently or derivatively by reason of their personal relationship with an individual who has been the object of Defendants' unlawful merchandising practices, including without limitation, spouses, parents, children, dependents, relatives and/or intestate beneficiaries, or "significant others," ("Derivative Claimants").

49. The proposed class excludes (i) defendant and its officers, directors and employees and their immediate family members, (ii) the court presiding over any motion to approve this settlement agreement; and (iii) those persons who timely and validly request exclusion from the settlement class.

50. The requirements for maintaining this action as a class action are satisfied.

51. The proposed class is so numerous and so geographically dispersed that the individual joinder of all absent class members is impracticable.

52. While the exact number of absent class members is unknown to Plaintiffs at this time, it is upon information and belief, alleged that the proposed class will include thousands of members. The numerosity requirement is, therefore, satisfied.

53. The particular members of the class are capable of being described without difficult managerial or administrative problems from the outset of this litigation.

54. The members of the class are readily identifiable from the information and records in the possession or control of Defendant.

55. Common questions of law or fact exist as to all proposed class members and predominate over any questions that affect only individual members of the proposed class.

56. In fact, the wrongs suffered and remedies sought by Plaintiffs and the other members of the class are premised upon a common and illegal course of conduct perpetrated by Defendant.

57. The common questions of law or fact include, but are not limited to the following:

   a. Whether Defendant committed a fraud upon Plaintiffs and the class;

   b. Whether Defendant violated the Missouri Merchandising Practices Act;

   c. Whether Defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

   d. Whether Defendant violated the consumer protection statutes of various other states;

   e. Whether Defendant used deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the marketing, advertisement, or sale of it prepaid, reloadable debt cards.

   f. Whether Defendant intentionally took the funds Plaintiffs and class members loaded on their prepaid reloadable debit cards;

   g. Whether Defendant negligently took the funds Plaintiffs and class members loaded on their prepaid reloadable debit cards;

   h. Whether Defendant failed to secure Plaintiffs' and class members' personal information such that other parties misappropriated their persona information and

took the funds Plaintiffs and class members loaded on their prepaid reloadable debit cards;

i.  Whether Defendant misrepresented the security of the prepaid reloadable debit cards;

j.  Whether Defendant failed to refund Plaintiffs and class members the money they loaded on their prepaid reloadable debit cards;

k.  Whether Defendant made misrepresentations in connection with the marketing and sale of their prepaid reloadable debit cards; and

l.  Whether Plaintiffs and class members suffered ascertainable damages.

58. Plaintiffs' claims are typical of the claims of the putative class.

59. Plaintiffs will fairly and adequately represent the interests of the members of the class.

60. Plaintiffs have no interests adverse to the interests of the members of the class.

61. Plaintiffs have retained competent attorneys who have experience in class action litigation and have been appointed class counsel by courts of competent jurisdiction.

62. A class action is a superior method for the fair and efficient adjudication of this controversy.

63. The adjudication of a separate action by individual members of the class would create a risk of (a) inconsistent or varying adjudications with respect to individual members of the class; or (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

64. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

65. There is no special interest in the members of the class individually controlling the prosecution of separate actions; the damages sustained by individual class members may be relatively small; and the expense and burden of individual litigation make it impossible for the class members individually to address the wrongs done to them.

66. There will be no difficulty managing this lawsuit as a class action in this Court.

67. Defendant transacts substantial business in the State of Missouri and will not be prejudiced or inconvenienced by the maintenance of the action in this forum.

68. A class action will cause an orderly and expeditious administration of class members' claims and economies of time, effort and expense will be fostered and uniformity of decisions will be ensured.

69. Moreover, the individual class members are likely to be unaware of their rights and not in a position (either through experience or financially) to commence individual litigation against Plaintiff.

70. Class certification is proper because inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the Plaintiff or adjudications with respect to individual members of the Class as a practical matter would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

## COUNT I—VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT (MO. REV. STAT. § 407.020)—CLAIMS BY PLAINTIFF JACKSON AND THE MISSOURI SUBCLASS

71. Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

72. Defendant induced Plaintiff Jackson and Missouri class members to purchase Green Dot prepaid, reloadable debit cards and to load funds onto those cards by making representations in connection with the advertising, marketing, and sale of the cards.

73. These representations included, but were not limited to the following:

   a. Using the cards was safe, secure, and that it was a smart way to control Plaintiff Jackson's and class members' money;

   b. Plaintiff Jackson and class members would be able to use the funds they loaded on the cards; and

   c. It would be easy for Plaintiff Jackson and class members to load, register, use, and reload the cards.

74. Defendant held itself out to Plaintiff Jackson as a merchant who normally dealt in the prepaid, reloadable debit card trade and who routinely dealt with consumers of prepaid, reloadable debit card trade.

75. Defendant's sale of the prepaid, reloadable debit cards online and through other vendors to Plaintiff Jackson and Missouri class members was done in the course of Defendant's usual and customary business.

76. Plaintiff Jackson and class members purchased and used the Green Dot debit card primarily for their personal, family and household purposes.

77. Defendant's representations in connection with the sale of the Green Dot debit card were false in that the card was not safe, secure, or a good way to control Plaintiff's money.

78. Defendant's representations in connection with the sale of the Green Dot debit card were false in that Plaintiff and the class members were not able to use the money they loaded on the card.

79. Defendant's conduct in inducing Plaintiff and class members to purchase the prepaid debit cards was deceptive, based upon false pretense, based upon false promise, based upon misrepresentation, an unfair practice, and a concealment, suppression, or omission of a material fact.

80. As a direct and proximate result of Defendant's conduct, Plaintiff and class members have lost an ascertainable amount of money.

81. Pursuant to the provisions of Mo. Rev. Stat. § 407.025, Plaintiff and class members are entitled to their reasonable attorney's fees incurred in connection with seeking compensation for the damages Defendant caused.

82. Defendant's actions were outrageous, willful, wanton, malicious, and with complete disregard such that Defendant should be held liable for punitive damages to deter such conduct in the future.

### COUNT II—PENNSYLVANIA UDAP—PLAINTIFF CHAPMAN AND PENNSYLVANIA CLASS

83. Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

84. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pennsylvania Statutes Annotated Title 73, § 201-1, *et seq.* In particular, Pennsylvania law provides:

(4) "Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following: . . . (ix) Advertising goods or services with intent not to sell them as advertised; . . . (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. Pa. Stat. Ann. Tit. 73, § 201-2.

85. By engaging in the practices discussed above, Defendant has violated Pennsylvania Statutes Annotated Title 73, § 201-2.

86. Defendant used unfair methods of competition or deceptive acts or practices in
connection with the marketing and sale of its prepaid debit card. These methods, acts, and
practices included, but were not limited to:

    a. Misrepresenting that using the cards was safe, secure, and that it was a smart way
to control Plaintiff Jackson's and class members' money;

    b. Misrepresenting that Plaintiff Jackson and class members would be able to use the
funds they loaded on the cards; and

    c. Misrepresenting that it would be easy for Plaintiff Jackson and class members to
load, register, use, and reload the cards.

87. Plaintiff suffered an ascertainable loss as a result of Defendant's actions described more
fully above.

88. Pursuant to the provisions of 73 P.S. § 201-9.2(a), Plaintiff and class members are
entitled to their reasonable attorney's fees incurred in connection with seeking
compensation for the damages Defendant caused.

89. Defendant's actions were outrageous, willful, wanton, malicious, and with complete
disregard such that Defendant should be held liable for punitive damages to deter such
conduct in the future.

**COUNT III—UNFAIR AND DECEPTIVE ACTS AND PRACTICES UNDER THE
VARIOUS STATE LAWS IN WHICH CLASS MEMBERS RESIDE (IF THE COURT
EVENTUALLY DETERMINES THAT THE LAWS OF A CONSUMERS' RESIDENCE
APPLY TO DEFENDANTS' WRONGFUL, UNFAIR, AND DECEPTIVE ACTS)**

90. Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

91. As the choice of law question cannot be conclusively addressed at this point in the
litigation, Plaintiffs state the following alternative causes of action under the laws of the

states of residence of Class Members, if it is later determined by the Court that the choice of law rules require the application of these state laws.

92. The practices discussed above all constitute unfair competition or unfair, unconscionable, deceptive, fraudulent, or unlawful acts or business practices in violation of the state consumer protection statutes listed in the paragraphs below.

93. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, et seq. Particularly, Alabama law prohibits deceptive acts or practices in the conduct of any trade or commerce including, but not limited to advertising goods or services with intent not to sell them as advertised.

94. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Revised Statutes § 44-1521, *et seq.* Particularly, Arizona law prohibits "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. Ann. § 44-1522(A). By engaging in the practices discussed above, Defendants have violated Arizona Revised Statute Annotated § 44-1522(A).

95. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated § 4-88-101, *et seq.* In particular, Arkansas law provides:

> Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following: (1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model; . . . (3) Advertising the goods or services with the intent not to sell them as advertised; . . . (10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade. . . .

Ark. Code Ann. § 4-88-107.

Arkansas law further provides,

> "[w]hen utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, the following shall be unlawful: (1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission."  Ark. Code Ann. § 4-88-108.

96. By engaging in the practices discussed above Defendants violated Arkansas Code Annotated §§ 4-88-107, 4-88-108.

97. Defendants are subject to the Unfair Competition Law ("UCL"), California Bus. & Prof. Code §§ 17200 *et seq*.  The UCL provides in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."  Defendants' conduct, as described herein, violated the "unlawful" prong of the UCL. Defendants' conduct, as described herein, also violated the "fraudulent" prong of the UCL.  Defendants' acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute "unfair" business acts and practices under the UCL.  Defendants' conduct offends public policy against false advertising.  Defendants' conduct is also immoral, unethical, and unscrupulous. Further, the injuries suffered by the California Subclass outweigh any conceivable benefit to consumers or competition that may derive from Defendants' conduct.

98. Defendants have violated the Consumers Legal Remedies Act (the "CLRA"), Calif. Civ. Code §§ 1750 *et seq*. Defendants violated and continue to violate the CLRA by engaging in the practices proscribed by Section 1770(a) in its transactions with members of the California Subclass.

99. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of Colorado Revised Statutes § 6-1-101, *et seq*. In particular, Colorado law provides:

> A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person: . . . (i) Advertises goods, services, or property with intent not to sell them as advertised; . . . (u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction . . . . Colo. Rev. Stat. § 6-1-105.

100. By engaging in the practices discussed above Defendants have violated Colorado Revised Statutes § 6-1-105.

101. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of the General Statutes of Connecticut § 42-110a, *et seq*. In particular, Connecticut law provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). By engaging in the practices discussed above, Defendants have violated the General Statutes of Connecticut § 42-110b.

102. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Statutes § 501.201, *et seq*. In particular, Florida law provides, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby

declared unlawful." Fla. Stat. § 501.204(1). By engaging in the practices discussed above, Defendants have violated Florida Statutes § 501.204(1).

103.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Georgia Code Annotated §10-1-390, et seq. In particular, Georgia law provides:

A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: . . . (9) Advertises goods or services with intent not to sell them as advertised. Ga. Code Ann. § 10-1-372.

104.     Georgia law further provides:

Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful. (b) By way of illustration only and without limiting the scope of subsection (a) of this Code section, the following practices are declared unlawful: . . . (9) Advertising goods or services with intent not to sell them as advertised . . .Ga. Code Ann. § 10-1-393(a).

105.     By engaging in the practices discussed above Defendants have violated Georgia Code Annotated §§ 10-1-372, 10-1-393(a).

106.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Illinois Compiled Statutes 505/1, *et seq*. In particular, Illinois law provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, [footnote] in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. . . . 815 Ill. Comp. Stat. 505/2.

107.     By engaging in the practices discussed above Defendants have violated 815 Illinois Compiled Statutes 505/2.

108.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Indiana Code § 24-5-0.5-1, *et seq*.  In particular, Indiana law provides:

(a) The following acts or representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts: (11) That the consumer will be able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it. Ind. Code § 24-5-0.5-3.

109.     By engaging in the practices discussed above, Defendant has violated Indiana Code § 24-5-0.5-3.

110.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Statutes Annotated § 50-623, *et seq*.  In particular, Kansas law provides:

(a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction; (b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled: (1) Representations made knowingly or with reason to know that: ( (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact . . . . Kan. Stat. Ann. § 50-626.

111.     By engaging in the practices discussed above, Defendant has violated Kansas Statutes Annotated § 50-626.

112.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Louisiana Revised Statutes Annotated § 51:1401, *et seq*.  Particularly, Louisiana law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  La. Rev. Stat. Ann. § 51:1405A.  By engaging in the practices discussed above, Defendant has violated Louisiana Revised Statutes Annotated § 51:1405A.

113.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Maryland Code Annotated, Commercial Law § 13-101, *et seq.*

114.     In particular, Maryland law provides:

> Unfair or deceptive trade practices include any: (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (3) Failure to state a material fact if the failure deceives or tends to deceive; . . . (5) Advertisement or offer of consumer goods, consumer realty, or consumer services: (i) Without intent to sell, lease, or rent them as advertised or offered; . . . (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) The promotion or sale of any consumer goods, consumer realty, or consumer service . . . Md. Code Ann., Com. Law § 13-301.

115.     By engaging in the practices discussed above, Defendant has violated Maryland Code Annotated, Commercial Law § 13-301.

116.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of the General Laws of Massachusetts Chapter 93A, § 1, *et seq.*  In particular, Massachusetts law provides, "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Mass. Gen. Laws Ch. 93A, § 2.  By engaging in the practices discussed above, Defendant has violated the General Laws of Massachusetts Chapter 93A, § 2.

117.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Michigan Compiled Laws § 445.901, *et seq.*  In particular, Michigan law provides:

(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows: (g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented. . . . . (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could

not reasonably be known by the consumer. . . . . (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is. . . . (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.  Mich. Comp. Laws § 445.903.

118.     By engaging in the practices discussed above Defendant has violated Michigan Compiled Laws § 445.903.

119.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-3, *et seq*.

120.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nevada Revised Statutes § 598.0903, *et seq*.  Nevada law provides in particular:

A person engages in a "deceptive trade practice" if, in the course of his business or occupation, he: . . . 9. Advertises goods or services with intent not to sell or lease them as advertised. . . . 15. Knowingly makes any other false representation in a transaction. . . .  Nev. Rev. Stat. § 598.0915.

121.     By engaging in the practices discussed above, Defendant has violated Nevada Revised Statutes § 598.0915.

122.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of New Hampshire Revised Statutes Annotated § 358-A:1, *et seq*. Particularly, New Hampshire law provides:

It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state.  Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following: . . . IX. Advertising goods or services with intent not to sell them as advertised . . . N.H. Rev. Stat. Ann. § 358-A:2.

123.     By engaging in the practices discussed above, including, but not limited to, Defendants' undisclosed defects, Defendants have violated New Hampshire Revised Statutes Annotated § 358-A:2.

124.     Defendant has engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of New Jersey Statutes Annotated § 56:8-1, *et seq.* Particularly, New Jersey law provides:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . . N.J.S.A. § 56:8-2.

125.     By engaging in the practices discussed above, Defendant has violated New Jersey Statutes Annotated § 56:8-2.

126.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of New York General Business Law § 349, *et seq.*  In particular, New York law provides, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349.  By engaging in the practices discussed above, Defendants has violated New York General Business Law § 349.

127.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina General Statutes § 75-1.1, *et seq.*  In particular, North Carolina law provides, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."  N.C. Gen. Stat. § 75-1.1(a).  By engaging in the practices discussed above, Defendant has violated North Carolina General Statutes § 75-1.1(a).

128.     Defendant has engaged in unfair competition or unfair or deceptive acts or

practices or made false representations in violation of Oklahoma Statutes Title 15, § 751,

*et seq.*  In particular, Oklahoma law provides:

> As used in the Oklahoma Consumer Protection Act: . . . 13. "Deceptive trade
> practice" means a misrepresentation, omission or other practice that has deceived
> or could reasonably be expected to deceive or mislead a person to the detriment of
> that person.  Such a practice may occur before, during or after a consumer
> transaction is entered into and may be written or oral; 14. "Unfair trade practice"
> means any practice which offends established public policy or if the practice is
> immoral, unethical, oppressive, unscrupulous or substantially injurious to
> consumers. . . . Okla. Stat. Tit. 15, § 752.

Oklahoma law further provides:

> A person engages in a practice which is declared to be unlawful under the
> Oklahoma Consumer Protection Act, Section 751 et seq. of this title, when, in the
> course of the person's business, the person: . . . 8. Advertises, knowingly or with
> reason to know, the subject of a consumer transaction with intent not to sell it as
> advertised; . . . 20. Commits an unfair or deceptive trade practice as defined in
> Section 752 of this title . . . . Okla. Stat. Tit. 15, § 753.

It continues to provide:

> A. A person engages in a deceptive trade practice when in the course of business,
> vocation, or occupation, the person:  . . . 5. Knowingly makes a false
> representation as to the characteristics, ingredients, uses, benefits or quantities of
> goods or services or a false representation as to the sponsorship, approval, status,
> affiliation, or connection of a person therewith; . . . C. The deceptive trade
> practices listed in this section are in addition to and do not limit the types of unfair
> trade practices actionable at common law or under other statutes of this state.
> Okla. Stat. Tit. 78, § 53.

129.     By engaging in the practices discussed above, Defendant has violated Oklahoma

Statutes Titles 15, §§ 752 and 753, 78, § 53.

130.     Defendants have engaged in unfair competition or unfair or deceptive acts or

practices in violation of South Carolina Code Annotated § 39-5-10, *et seq.*  In particular,

South Carolina law provides, "Unfair methods of competition and unfair or deceptive

acts or practices in the conduct of any trade or commerce are hereby declared unlawful. .

. .″  S.C. Code Ann. § 39-5-20.  By engaging in the practices discussed above, Defendant

has violated South Carolina Code Annotated § 39-5-20.

131.	Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of Tennessee Code Annotated § 47-18-101, et seq.  In particular,

Tennessee law provides:

(b) Without limiting the scope of subsection (a), the following unfair or deceptive
acts or practices affecting the conduct of any trade or commerce are declared to be
unlawful and in violation of this part . . . (9) Advertising goods or services with
intent not to sell them as advertised; . . . (21) Using statements or illustrations in
any advertisement which create a false impression of the grade, quality, quantity,
make, value, age, size, color, usability or origin of the goods or services offered,
or which may otherwise misrepresent the goods or services in such a manner that
later, on disclosure of the true facts, there is a likelihood that the buyer may be
switched from the advertised goods or services to other goods or services; . . . (27)
Engaging in any other act or practice which is deceptive to the consumer or to any
other person . . .Tenn. Code Ann. § 47-18-104.

132.	By engaging in the practices discussed above, including, but not limited to,

Defendants' undisclosed defects, Defendants have violated Tennessee Code Annotated §

47-18-104.

133.	Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, *et seq*.  Specifically,

Defendant has violated the following sections of the Texas Deceptive Trade Practices Act

("DTPA"):

Tex. Bus. & Com. Code §17.50(1): the use or employment of a false, misleading,
or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(7),
§17.46(b)(20), and §17.46(b)(24) of the DTPA that were detrimentally relied
upon by Plaintiffs and each member of the Texas Class; and

Tex. Bus. & Com. Code §17.50(3): an unconscionable action or course of action
as defined by §17.45(5). TEX. BUS. & COM. CODE ANN. § 17.41.

134.	By engaging in the practices discussed above, Defendants have violated Texas

Business & Communication Code Annotated § 17.41.

135.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Virginia Code Annotated § 59.1-196, *et seq*.   In particular, Virginia law provides:

> The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful: . . . 8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised. . . . 14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . .Va. Code Ann. § 59.1-200.   By engaging in the practices discussed above, including, but not limited to, Defendants' undisclosed defects, Defendants have violated Virginia Code Annotated § 59.1-200.

136.     Defendant has engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Washington Revised Code. § 19.86.010, *et seq*. Particularly, Washington law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Wash. Rev. Code § 19.86.020.

137.     By engaging in the practices discussed above, Defendants has violated Washington Revised Code § 19.86.020.

138.     Defendant's acts, practices, and misconduct described above constitutes unfair or deceptive acts and practices within the meaning of each of the state statutes listed above because each of these statutes prohibits deceptive conduct in consumer transactions.

139.     It was likely and reasonably foreseeable that Defendant's misconduct described more fully above would mislead Plaintiffs and Class Members who would reasonably rely on Defendant's representations to their detriment.

140.     Plaintiffs and members of the Class have been injured by reason of Defendant's unfair and deceptive acts and practices.

## COUNT IV—FRAUDULENT MISREPRESENTATION

141.    Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

142.    Defendant made representations to Plaintiffs and class members as set forth more

fully above.

143.    Defendant's representations to Plaintiffs and the class members were false in that

the debit cards were not safe, secure, or a good way to control Plaintiffs' and the class

members' money.

144.    Defendant's representations to Plaintiffs' and the class members were false in that

Plaintiffs and the class members were not able to use the money they loaded on the card.

145.    Defendant's representations to Plaintiffs and the class members were material to

Plaintiffs' and class members' decision to purchase the debit cards in that they would not

have purchased the cards and loaded the cards absent Defendant's representations.

146.    Defendant knew that the representations were false at the time they made them.

147.    Alternatively, Defendant was ignorant of the veracity of the representations.

148.    Defendant intended that Plaintiffs and the class act on the representations by

purchasing the prepaid debit cards.

149.    Plaintiffs and class members did not know that Defendant's representations were

false.

150.    Plaintiffs and class members relied on Defendant's representations by purchasing

prepaid debit cards and by loading money onto the cards.

151.    Plaintiffs and class members had a right to rely on Defendant's representations.

152.    As a direct and proximate result of Defendant's actions and misrepresentations,

Plaintiff and class members suffered injury in the form of financial loss.

153.     Defendant's actions were outrageous, willful, wanton, malicious, and with

complete disregard such that Defendant should be held liable for punitive damages to

deter such conduct in the future.


**DOUGLAS, HAUN & HEIDEMANN, P.C.**
111 West Broadway, P.O. Box 117
Bolivar, Missouri 65613
Telephone:  (417) 326-5261
Facsimile: (417) 326-2845
nathan@dhhlawfirm.com


By___/s/ Nathan A. Duncan_____
           Nathan A. Duncan
           Missouri Bar No. 60186
           Attorney for Plaintiffs


**DHH  File No. L24963-001**



## IN THE 30TH JUDICIAL CIRCUIT, DALLAS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>MICHAEL O'BRIEN HENDRICKSON | Case Number: 18DA-CC00054 |
| Plaintiff/Petitioner:<br>CURTIS JACKSON | Plaintiff's/Petitioner's Attorney/Address<br>NATHAN A DUNCAN<br>111 W. BROADWAY<br>P.O. BOX 117<br>BOLIVAR, MO 65613 |
| vs. | |
| Defendant/Respondent:<br> GREEN DOT CORPORATION | Court Address:<br>108 S MAPLE<br>P O BOX 1910<br>BUFFALO, MO 65622 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **GREEN DOT CORPORATION**
**Alias:**

CSC-LAWYERS INCORP SERVICE CO
221 BOLIVAR ST
JEFFERSON CITY, MO 65101



*COURT SEAL OF*

*DALLAS COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

*Susan Potter, Circuit Clerk*

| *Thursday, December 27, 2018* | */s/ Susan Faulkner, Deputy Clerk* |
|---|---|
| Date | Clerk |

Further Information:

## Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with
_____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____     _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____     _____
                                    Date                          Notary Public

**Sheriff's Fees, if applicable**

| | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary Supplemental Surcharge | $_____10.00_____ | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| **Total** | **$_____** | |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only* **Document Id # 18-SMCC-1054**      1 of 1                *Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo*

Case 6:19-cv-03059-BCW   Document 1-1   Filed 02/12/19   Page 29 of 31



# IN THE 30TH JUDICIAL CIRCUIT, DALLAS COUNTY, MISSOURI

*RECEIVED*
*JAN 11 2019*
*COLE COUNTY*
*SHERIFF'S OFFICE*

| Judge or Division:<br>MICHAEL O'BRIEN HENDRICKSON | Case Number: 18DA-CC00054 |
|---|---|
| Plaintiff/Petitioner:<br>CURTIS JACKSON<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>NATHAN A DUNCAN<br>111 W. BROADWAY<br>P.O. BOX 117<br>BOLIVAR, MO 65613 |
| Defendant/Respondent:<br> GREEN DOT CORPORATION | Court Address:<br>108 S MAPLE<br>P O BOX 1910<br>BUFFALO, MO 65622 |
| Nature of Suit:<br>CC Other Tort | |
| | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to: GREEN DOT CORPORATION**
**Alias:**
**CSC-LAWYERS INCORP SERVICE CO**
**221 BOLIVAR ST**
**JEFFERSON CITY, MO 65101**

*COURT SEAL OF*

*CIRCUIT COURT OF MISSOURI*

*DALLAS COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

*Susan Potter, Circuit Clerk*

| *Thursday, December 27, 2018* | /s/ Susan Faulkner, Deputy Clerk |
|---|---|
| Date | Clerk |

Further Information:

## Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: CSC Lawyers, S.L. (name) Designee (title).

☐ other: _____.

Served at 350 E. High (address)

in Cole (County/City of St. Louis), MO, on 01.15.19 (date) at 800 am (time).

Sheriff John P Wheeler By Sgt Aimee Wren

Printed Name of Sheriff or Server        Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ **FILED** (date).

*(Seal)*

My commission expires: _____     **TIME**_____

Date        Notary Public

*JAN 28 2019*

SUSAN FAULKNER, CLERK
CIRCUIT COURT DALLAS COUTY



OSCA (06-18) SM30 (SMCC) *For Court Use Only:* **Document Id # 18-SMCC-1054**   1 of 1   Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo



Search for Cases by: Select Search Method... ▼

**Judicial Links** | **eFiling** | **Help** | **Contact Us** | **Print**      GrantedPublicAccess **Logoff** MSEITZ69337

**18DA-CC00054 - CURTIS JACKSON ET AL V GREEN DOT CORPORATION (E-CASE)**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |
|---|---|---|---|---|---|---|---|---|

This information is provided as a service and is not considered an official court record.

[**Click here to eFile on Case**](#)
**Click here to Respond to Selected Documents**

**Sort Date Entries:** ● Descending ○ Ascending

**Display Options:** All Entries ▼

---

**01/30/2019** ☐ **Case Mgmt Conf Scheduled**

Case is hereby docketed for a Case Management Conference (CMC) on 3-7-19 at 1:00 P.M. All non-defaulting pro se parties and any party by their attorneys of record are to appear. At the CMC, the Court will make inquiry as to the status of the case and may enter appropriate orders which shall include, but are not limited to, determining or ruling on the following: 1. Whether all parties have been served; 2. Motions for Leave to Amend / Dismiss / Make More Definite and Certain; 3. Whether discovery will be completed within 120 days after Answer has been filed pursuant to Local Rule 32.1 and, if good cause is shown, whether discovery should be extended and ordering a discovery deadline; 4. Whether the case should be tracked for a 12, 24 or 30 month disposition track for purposes of S.Ct Rule 17.23; 5. Whether to Order Mediation and, if ordered, appointing a Mediator from the approved 30th Circuit list and ordering a mediation deadline; 6. Noticed Motions; 7. Whether to enter a Scheduling Order; and 8. Whether to set the case for trial and PTC. The CMC does not obviate the need for a party to file a Notice of Hearing for any Motion. Unless any such Motion is properly noticed for hearing, the Court will not consider the same at any CMC without consent of the opposing party and the Court. The clerk is to notify all served, non-defaulting pro se parties, if any, of this docket entry by regular mail.

     **Scheduled For:** 03/07/2019; 1:00 PM; MICHAEL O'BRIEN HENDRICKSON; Dallas

**01/28/2019** ☐ **Corporation Served**

Document ID - 18-SMCC-1054; Served To - GREEN DOT CORPORATION; Server - SO COLE COUNTY-JEFFERSON CITY; Served Date - 15-JAN-19; Served Time - 08:00:00; Service Type - Sheriff Department; Reason Description - Served

**12/27/2018** ☐ **Summons Issued-Circuit**

Document ID: 18-SMCC-1054, for GREEN DOT CORPORATION. (attorney to attach documents for service and make all necessary service arrangements)

**12/19/2018** ☐ **Filing Info Sheet eFiling**

     **Filed By:** NATHAN A DUNCAN

     ☐ **Pet Filed in Circuit Ct**

Petition.

     **On Behalf Of:** CURTIS JACKSON, ANTOINETTE CHAPMAN

☐ **Judge Assigned**

---

Case.net Version 5.14.0.6       [Return to Top of Page](#)       Released 12/31/2018